BUCHALTER
A Professional Corporation
GARY A. WOLENSKY (SBN: 154041)
LINDA I. YEN (SBN: 221743)
SAMUEL Q. SCHLEIER (SBN: 312449)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: gwolensky@buchalter.com

Attorneys for Defendants Uber Technologies, Inc. and Rasier, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE LSA 3, an individual; Jane Doe LSA 4, an individual; JANE DOE LSA 5, an individual; JANE DOE LSA 6, an individual; JANE DOE LSA 7, an individual; JANE DOE LSA 8, an individual; JANE DOE LSA 9, an individual; JANE DOE LSA 10, an individual;, <br><br> Plaintiffs, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC., a Delaware Corporation; RAISER, LLC, a Delaware Limited Liability Company; and DOES through , Inclusive, <br><br> Defendants. | Case No. ____3:21-cv-4194____ <br><br> [Originally Filed in San Francisco County Superior Court, Case No. CGC-21591921] <br><br> **DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)** <br><br> Complaint Filed: June 1, 2021 |

## <u>NOTICE OF REMOVAL</u>

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Uber Technologies, Inc. ("Uber") and Rasier, LLC (erroneously named as "Raiser, LLC") ("Rasier") (together "Defendants") hereby remove this civil action from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.[1]  The grounds for removal are set forth below.

---

[1] By filing or consenting to this Notice of Removal, Defendants do not waive any right, defense, affirmative defense, or objection, including without limitation any challenges to personal jurisdiction, insufficient process, and/or insufficient service of process.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**NATURE OF THE ACTION**

1.      On or about June 1, 2021, Plaintiffs filed in the Superior Court of the State of California, County of San Francisco, a civil action captioned as *Jane Doe LSA 3* v. *Uber*, Case No. CGC-21-591921, (the "Action"), asserting claims against Uber and Rasier.

**VENUE AND JURISDICTION**

2.      The United States District Court for the Northern District of California is an appropriate venue for removal pursuant to 28 U.S.C. § 1441(a) because it embraces the county in which the state court action is now pending.

3.      For reasons set forth in greater detail below, this Court has jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332 and 1441.  Jurisdiction extends pursuant to 28 U.S.C. §§ 1332 and 1441 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

**COMPLIANCE WITH STATUTORY REQUIREMENTS**

4.      In accordance with 28 U.S.C. § 1446(a), attached as **Exhibit A** is a copy of the Complaint as filed, which constitutes the entirety of the record in the Action.

5.      As of June 2, 2021, the date this Notice of Removal was filed, Defendants have not been served with the Complaint in the Action.

6.      Defendants' removal is timely under 28 U.S.C. § 1446(b) as it is being filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."  Although Uber and Rasier have not been served with the Complaint, the Complaint was filed on June 1, 2021, and Uber and Rasier obtained a copy of it via the San Francisco Superior Court's electronic filing system on June 2, 2021.

7.      Pursuant to 28 U.S.C. § 1446(d), Uber and Rasier will promptly provide written notice of removal of this action to Plaintiffs and will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of San Francisco.

8.      Paragraph 27 of the Complaint refers to defendants Does 1 through 50, whose identity is alleged to not be ascertained at this time.  Because those Doe defendants have not been named, they are not properly joined and served in this action and there is no basis for Plaintiffs to

assert that those unknown defendants need to join in or consent to the filing of this Notice of Removal.

### BASIS OF REMOVAL

9.      A civil action commenced in state court may be removed to federal district court provided that the federal district court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).

10.      This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a).

11.      At the time of the commencement of the Action and at the time of removal, Uber is and has been incorporated in Delaware with its principal place of business in San Francisco, California, and therefore is a citizen of Delaware and California.  *See* 28 U.S.C. § 1332(c)(1).

12.      At the time of the commencement of the Action and at the time of removal, Rasier is and has been a Delaware limited liability company with its principal place of business in San Francisco, California, and therefore is a citizen of Delaware and California.  *See* 28 U.S.C. § 1332(d)(10).

13.      At the time of the commencement of the Action and at the time of removal, Plaintiff Jane Doe LSA 4 is and has been a citizen of the State of Kentucky; Plaintiff Jane Doe LSA 5 is and has been a citizen of the State of Virginia; Plaintiff Jane Doe LSA 6 is and has been a citizen of the State of Colorado; Plaintiff Jane Doe LSA 7 is and has been a citizen of the State of Nevada; Plaintiff Jane Doe LSA 9 is and has been a citizen of the State of Minnesota; and Plaintiff Jane Doe LSA 10 is and has been a citizen of the State of Georgia.

14.      Each of those Plaintiffs alleges that she is a resident of the above listed states.  Compl. ¶¶ 16–19, 21–22.  For diversity purposes, a person is a "citizen" of the place in which he or she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is frequently considered *prima facie* evidence of domicile.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Stine* v. *Moore*, 213 F.2d 446, 448 (5th Cir. 1954).  Defendants therefore allege that each Plaintiff is a citizen of the State in which she resides.

/ / /

15.     There are two Plaintiffs, Plaintiff Jane Doe LSA 3 and Plaintiffs Jane Doe LSA 8, who allege that they are residents of the State of California.  However, the claims of the eight Plaintiffs, including the two residents of California, are not permitted to be joined together in a single action.  Because the claims of the eight individual Plaintiffs—including the two California residents—are misjoined together in a single action, there is complete diversity of citizenship as to each of the Plaintiffs who is not a resident of California.

16.     To the extent Plaintiff cites 28 U.S.C. § 1441(b)(2) to argue that the Action may not be removed because one of "the parties in interest properly joined and served as [a defendant] is a citizen of the State in which such action is brought," that argument fails because Defendants have not yet been served with the Complaint.

17.     The amount in controversy requirement is also satisfied.  Although Defendants deny any and all liability to Plaintiffs, Plaintiffs' factual allegations about purchases reflect an amount in controversy "more likely than not" exceeding $75,000, exclusive of interest and costs.  *See, e.g.*, *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996) (applying preponderance of the evidence—*i.e.*, "more likely than not"—standard to determination of amount-in-controversy requirement); 28 U.S.C. § 1332(a).

18.     *First*, Plaintiffs' Complaint explicitly alleges the amount in controversy with respect to each Plaintiff *exceeds* $25,000, for purposes of attempting to establish unlimited jurisdiction in the state court.  Compl. ¶ 14.

19.      *Second*, each Plaintiff alleges that she was sexually assaulted, and some additionally allege that they were falsely imprisoned, kidnapped, stalked, and/or battered by a driver.  Each alleges that she sustained severe and lasting injuries as a result of the alleged incident she experienced.  More specifically, Plaintiffs each allege that their experiences resulted in physical personal injuries, including pain and disfigurement, as well as general damages of pain and suffering, such as but not limited to: emotional distress, anguish, and humiliation.  *See, e.g.*, Compl. ¶¶ 243–44, 253–54, 256.  Plaintiffs each claim that she "may *never* fully recover" from these alleged harms.  *See, e.g.*, Compl. ¶¶ 243, 254 (emphasis added).  Further, each Plaintiff alleges that the alleged incident resulted in a need for medical treatment previously and will

1    continue to do so in the future, and each Plaintiff alleges that she suffered past lost earnings and

2    will suffer future lost earnings and earning potential.  Compl. ¶ 256.

3         20.    Because § 425.10(b) of the California Code of Civil Procedure prevents a plaintiff

4    in an action for personal injury from claiming a specific dollar amount in actual or punitive

5    damages in the Complaint, Plaintiffs' Complaint does not specify the specific dollar amount of

6    damages they seek.  However, the Complaint evidences that each Plaintiff is seeking damages in

7    excess of $75,000 because each is seeking damages for fourteen causes of action, including, but

8    not limited to: (1) special damages; (2) past and future general damages, including physical pain,

9    mental anguish, disfigurement and physical impairment; general damages; (3) past and future lost

10   earnings and/or earning capacity; (5) medical expenses, past and future; (6) punitive and

11   exemplary damages; (6) prejudgment interest from the date of each Plaintiff's respective incident

12   to the date of judgment; (7) the costs of litigation incurred; and (8) attorney's fees.  Compl. ¶ 256.

13   Those claims for damages establish that the amount in controversy exceeds $75,000 as to each

14   Plaintiff.

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

## CONCLUSION

21.     By removing this case, Defendants do not waive and are not estopped from raising any defenses that were available to them in state court.

22.     In accordance with 28 U.S.C. § 1446(d), Defendants will promptly file a copy of this Notice of Removal with the Superior Court of the State of California, County of San Francisco, and will promptly provide written notice of this filing to all adverse parties.

23.     Defendants reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 Defendants remove this action from the Superior Court of the State of California, County of San Francisco, to the United State District Court for the Northern District of California.

DATED:  June 2, 2021

BUCHALTER
A Professional Corporation

By: _____
        GARY A. WOLENSKY
        LINDA I. YEN
        SAMUEL Q. SCHLEIER
        Attorneys for Defendants
        Uber Technologies, Inc. and Rasier, LLC

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**NOTICE OF REMOVAL**                              Case No. _____
BN 45790537v1

# Exhibit A

NO SUMMONS ISSUED

Laurel L. Simes (SBN #134637)
Rachel Abrams (SBN #209316)
Meghan E. McCormick (SBN #283853)
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
Email: llsimes@levinsimes.com
Email: rabrams@levinsimes.com
Email: mmccormick@levinsimes.com
*Attorneys for Plaintiffs*

ENDORSED
**F I L E D**
San Francisco County Superior Court

**JUN 0 1 2021**

CLERK OF THE COURT
BY: **ANGELICA SUNGA**
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| JANE DOE LSA 3, an individual; Jane Doe LSA 4, an individual; JANE DOE LSA 5, an individual; JANE DOE LSA 6, an individual; JANE DOE LSA 7, an individual; JANE DOE LSA 8, an individual; JANE DOE LSA 9, an individual; JANE DOE LSA 10, an individual; <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., a Delaware Corporation; RAISER, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, Inclusive, <br><br> Defendants. | Case No. **CGC-21-591921** <br><br> **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** <br><br> 1.  **GENERAL NEGLIGENCE** <br> 2.  **NEGLIGENT HIRING, RETENTION, AND SUPERVISION** <br> 3.  **COMMON CARRIER NEGLIGENCE** <br> 4.  **NEGLIGENT FAILURE TO WARN** <br> 5.  **VICARIOUS LIABILITY/LIABILITY FOR THE TORTS OF UBER'S DRIVERS** <br> 6.  **VICARIOUS LIABILITY FOR SEXUAL ASSAULT** <br> 7.  **VICARIOUS LIABILITY FOR SEXUAL BATTERY** <br> 8.  **VICARIOUS LIABILITY FOR FALSE IMPRISONMENT** <br> 9.  **INTENTIONAL MISREPRESENTATION** <br> 10.  **NEGLIGENT MISREPRESENTATION** <br> 11.  **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br> 12.  **BREACH OF CONTRACT** <br> 13.  **STRICT PRODUCT LIABILITY – DESIGN DEFECT** <br> 14.  **STRICT PRODUCT LIABILITY- FAILURE TO WARN** |

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT FOR DAMAGES

Jane Doe LSA 3[1], Jane Doe LSA 4, Jane Doe LSA 4, Jane Doe LSA 4, Jane Doe LSA 5, Jane Doe LSA 6, Jane Doe LSA 7, Jane Doe LSA 8, Jane Doe LSA 9, and Jane Doe LSA 10 ("Plaintiffs") allege causes of action against Uber, Inc. ("Uber"), a corporation with its principal place of business in San Francisco, California, and Rasier, LLC ("Rasier"), a corporation with its principal place of business in San Francisco, California, and Does 1 through 50, inclusive, and each of them, and complain and allege as follows:

## **INTRODUCTION**

1.     Uber is a transportation company headquartered in San Francisco, California that, beginning in 2009, pioneered an App-based transportation system that has been implemented around the world, including across the entire United States.

2.     As early as 2014 Uber became aware that Uber drivers were sexually assaulting and raping female passengers.  In the seven years since, sexual predators driving for Uber have continued to sexually assault, harass, kidnap, physically assault, and/or rape Uber's passengers. Complaints to Uber by female passengers who had been attacked by Uber drivers, combined with subsequent criminal investigations by law enforcement, clearly establish that Uber has been fully aware of these continuing attacks by sexual predators driving for Uber.  Uber's response to these ongoing sexual assaults by Uber drivers has been slow and inadequate.

3.     While Uber has, in recent years, publicly acknowledged this sexual assault crisis, including the publication of Uber's U.S. Safety Report, in December 2018, Uber has failed to implement basic safety measures necessary to prevent these serious sexual assaults, which continue to occur to this day.

4.     Plaintiff, Jane Doe LSA 3 ("Plaintiff Doe 3"), was sexually assaulted by an Uber driver she was led to believe would give her a safe ride to her destination.   Plaintiff ordered an Uber ride through the ride-sharing software application owned and controlled by Uber ("the Uber App").  At all times relevant times Defendants Uber and Rasier operated and controlled the Uber

---

[1] Counsel for Plaintiff will be filing numerous complaints on behalf of clients who have been sexually assaulted by Uber drivers. As such, counsel is numbering its Jane Doe Plaintiffs in chronological order to readily distinguish them.  LSA has been added to distinguish these Jane Doe Plaintiffs from other Jane Doe Plaintiffs whose cases have been filed by other law firms.

Levin Simes Abrams llp
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

App.  The Uber driver, while in the course and scope of his employment for Uber and Rasier, and while otherwise working on behalf of Uber, sexually assaulted Plaintiff.

5.      Plaintiff, Jane Doe LSA 4 ("Plaintiff Doe 4"), was sexually assaulted and falsely imprisoned by an Uber driver she was led to believe would give her a safe ride to her destination. Plaintiff ordered an Uber ride through the ride-sharing software application owned and controlled by Uber ("the Uber App").  At all times relevant times Defendants Uber and Rasier operated and controlled the Uber App.  The Uber driver, while in the course and scope of his employment for Uber and Rasier, and while otherwise working on behalf of Uber, sexually assaulted and falsely imprisoned Plaintiff.

6.      Plaintiff, Jane Doe LSA 5 ("Plaintiff Doe 5"), was sexually assaulted by an Uber driver she was led to believe would give her a safe ride to her destination.   Plaintiff's Uber ride was ordered through the ride-sharing software application owned and controlled by Uber ("the Uber App").  At all times relevant times Defendants Uber and Rasier operated and controlled the Uber App.  The Uber driver, while in the course and scope of his employment for Uber and Rasier, and while otherwise working on behalf of Uber, sexually assaulted Plaintiff.

7.      Plaintiff, Jane Doe LSA 6 ("Plaintiff Doe 6"), was falsely imprisoned and sexually assaulted by an Uber driver she was led to believe would give her a safe ride to her destination. Plaintiff ordered an Uber ride through the ride-sharing software application owned and controlled by Uber ("the Uber App").  At all times relevant times Defendants Uber and Rasier operated and controlled the Uber App.  The Uber driver, while in the course and scope of his employment for Uber and Rasier, and while otherwise working on behalf of Uber, falsely imprisoned and sexually assaulted Plaintiff.

8.      Plaintiff, Jane Doe LSA 7 ("Plaintiff Doe 7"), was falsely imprisoned, sexually assaulted and stalked by an Uber driver she was led to believe would give her a safe ride to her destination.   Plaintiff ordered an Uber ride through the ride-sharing software application owned and controlled by Uber ("the Uber App").  At all times relevant times Defendants Uber and Rasier operated and controlled the Uber App.  The Uber driver, while in the course and scope of his employment for Uber and Rasier, and while otherwise working on behalf of Uber, falsely

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   imprisoned, sexually assaulted and stalked Plaintiff.

2      9.     Plaintiff, Jane Doe LSA 8 ("Plaintiff Doe 8"), was sexually assaulted by an Uber

3   driver she was led to believe would give her a safe ride to her destination.   Plaintiff ordered an

4   Uber ride through the ride-sharing software application owned and controlled by Uber ("the Uber

5   App").  At all times relevant times Defendants Uber and Rasier operated and controlled the Uber

6   App.  The Uber driver, while in the course and scope of his employment for Uber and Rasier, and

7   while otherwise working on behalf of Uber, sexually assaulted Plaintiff.

8      10.    Plaintiff, Jane Doe LSA 9 ("Plaintiff Doe 9"), was sexually assaulted by an Uber

9   driver she was led to believe would give her a safe ride to her destination.   Plaintiff's

10  acquaintance ordered an Uber ride for Plaintiff through the ride-sharing software application

11  owned and controlled by Uber ("the Uber App").  At all times relevant times Defendants Uber and

12  Rasier operated and controlled the Uber App.  The Uber driver, while in the course and scope of

13  his employment for Uber and Rasier, and while otherwise working on behalf of Uber, falsely

14  imprisoned and sexually assaulted Plaintiff.

15     11.    Plaintiff, Jane Doe LSA 10 ("Plaintiff Doe 10"), was falsely imprisoned,

16  kidnapped, sexually assaulted, battered and stalked by an Uber driver she was led to believe would

17  give her a safe ride to her destination.   Plaintiff ordered an Uber ride through the ride-sharing

18  software application owned and controlled by Uber ("the Uber App").  At all times relevant times

19  Defendants Uber and Rasier operated and controlled the Uber App.  The Uber driver, while in the

20  course and scope of his employment for Uber and Rasier, and while otherwise working on behalf

21  of Uber, falsely imprisoned, kidnapped, sexually assaulted, battered and stalked Plaintiff.

22     12.    Plaintiffs bring this civil action to recover damages for the injuries they suffered as

23  a result of being sexually assaulted by an Uber driver during an Uber ride.

24     13.    Uber is a common carrier under California law. Because of Defendants' acts and

25  omissions, each aforementioned Plaintiff has suffered damages that far exceed the jurisdictional

26  floor of this Court.

27     14.    This is an unlimited action. The amount in controversy with respect to each

28  Plaintiff exceeds $25,000.00. Cal. Code Civ. P. § 85.

4

## **PARTIES**

15.     Plaintiff Doe 3 is an adult woman who is a resident of San Diego, California. The assault occurred in San Diego, California.

16.     Plaintiff Doe 4 is an adult woman who is a resident of Louisville, Kentucky.  The assault occurred in Louisville, Kentucky.

17.     Plaintiff Doe 5 is an adult woman who is a resident of Reston, Virginia. The assault occurred in Reston, Virginia.

18.     Plaintiff Doe 6 is an adult woman who is a resident of Colorado Springs, Colorado. The assault occurred in Colorado Springs, Colorado.

19.     Plaintiff Doe 7 is an adult woman who is a resident of Las Vegas, Nevada.  The assault occurred in Las Vegas, Nevada.

20.     Plaintiff Doe 8 is an adult woman who is a resident of San Jose, California.  The assault occurred in San Jose, California.

21.     Plaintiff Doe 9 is an adult woman who is a resident of Minneapolis, Minnesota. The assault occurred in the greater Minneapolis/St. Paul area.

22.     Plaintiff Doe 10 is an adult woman who is a resident of Macon, Georgia.  The assault occurred in Macon, Georgia.

23.     The above-described Jane Doe Plaintiffs file this action under a pseudonym because they are the victims of sexual assault, and they need anonymity to protect their privacy in this sensitive and highly personal matter. Plaintiffs proceed in this manner to protect their legitimate privacy rights. Disclosure of their full names would expose them to stigmatization, invade their privacy, and make them vulnerable to retaliation. For these reasons, Plaintiffs' need for anonymity outweighs both the prejudice to the Defendants' and the public's interest in knowing their identities. Defendants are aware of the true name of the Plaintiffs and the circumstances surrounding these causes of action. Plaintiffs further anticipate seeking concurrence from Defendants for entry into a protective order to prevent the unnecessary disclosure of each Jane Doe Plaintiff's real name in the public record.

24.     Defendant Uber Technologies, Inc. is a Delaware corporation with its corporate

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  headquarters, principal office, and principal place of business at 1515 3rd Street, San Francisco,

2  San Francisco County, California, 94158. Defendant Uber Technologies, Inc. has been served with

3  process through its registered agent, CT Corporation System.

4       25.    Defendant Raiser, LLC is a Delaware limited liability company. Upon information

5  and belief, Raiser is a wholly owned subsidiary of Uber Technologies, Inc. Raiser maintains its

6  corporate headquarters, principal office, and principal place of business at 1515 3rd Street, San

7  Francisco, San Francisco County, California, 94158. Defendant Raiser has been served with

8  process through its registered agent, CT Corporation System.

9       26.    Unless otherwise specified, this Complaint refers to Defendants Uber

10  Technologies, Inc. and Raiser, LLC collectively as "Uber."

11       27.    The true names and capacities, whether individual, plural, corporate, partnership,

12  associate, or otherwise, of Does 1 through 50, inclusive, are unknown to Plaintiffs who therefore

13  sue said Defendants by such fictitious names.  The full extent of the facts linking such fictitiously

14  sued Defendants is unknown to Plaintiffs.  Plaintiffs are informed and believe, and thereon allege,

15  that each of the Defendants designated herein as a Doe was, and is, negligent, or in some other

16  actionable manner, responsible for the events and happenings hereinafter referred to, and thereby

17  negligently, or in some other actionable manner, legally caused the hereinafter described injuries

18  and damages to Plaintiffs.  Plaintiffs will hereafter seek leave of the Court to amend this

19  Complaint to show the Defendants' true names and capacities after the same have been

20  ascertained.

21       28.    Plaintiffs are informed and believe, and on that basis allege, that at all times herein

22  mentioned, each of the defendants herein was the agent, servant, licensee, employee, assistant,

23  consultant, or alter ego, of each of the remaining defendants, and was at all times herein

24  mentioned acting within the course and scope of said relationship when Plaintiffs were injured as

25  set forth herein.  Plaintiffs are informed and believe that each and every Defendant, when acting as

26  a principal, was negligent in the selection, hiring, supervision or retention of each and every other

27  Defendant as an agent, servant, employee, assistant, or consultant.  Plaintiffs are further informed

28  and believe, and thereon allege, that at all times herein mentioned, each business, public entity  or

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

corporate employer, through its officers, directors, supervisors and managing agents, and each individual defendant, had advance knowledge of the wrongful conduct, psychological profile, and behavior propensity of said agents, servants, licensees, employees, assistants, consultants, and alter egos, and allowed said wrongful conduct to occur and continue to occur, thereby ratifying said wrongful conduct, and, after becoming aware of their wrongful conduct, each public entity, and corporate defendant by and through its officers, directors, supervisors and managing agents, and each individual defendant, authorized and ratified the wrongful conduct herein alleged.

29.     Defendants are liable for the acts of each other through principles of *respondeat superior*, agency, ostensible agency, partnership, alter-ego and other forms of vicarious liability.

30.     Each Uber driver who perpetrated the above-described assaults was an agent, servant, and employee of Uber.

31.     This Complaint refers to Defendant Uber Technologies, Inc., Defendant Raiser, LLC, and Does 1 through 50, inclusive, as Defendants.

## JURISDICTION & VENUE

32.     The California Superior Court has subject-matter jurisdiction over this action, pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts."

33.     Each aforementioned Plaintiff seeks relief that is within the jurisdictional limits of this Court.

34.     The California Superior Court has personal jurisdiction over Defendants Uber and Raiser because both have their principal places of business in California and intentionally avail themselves of the benefits and protection of California law such that the exercise of jurisdiction by the California courts is consistent with traditional notions of fair play and substantial justice.

35.     Venue is proper in the Superior Court of the County of San Francisco, California, pursuant to California Code of Civil Procedure §§ 395(a) and 395.5. Defendant Uber has its principal place of business at 1515 3rd Street, San Francisco, CA 94158 and at all times relevant has been doing business within the County of San Francisco.

36.     All other jurisdictional prerequisites and conditions precedent to suit have been

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  satisfied.

2  <u>**FACTUAL ALLEGATIONS**</u>

3  **I. THE ATTACKS ON PLAINTIFFS**

4  **A. The Attack on Plaintiff Doe 3**

5  37.     In or around June 2019, Plaintiff Doe 3 ordered an Uber. During the ride, the Uber

6  driver made inappropriate comments to Plaintiff. At the end of the ride, the Uber driver exited the

7  vehicle, went over to the passenger-side door and intercepted Plaintiff as she was exiting the

8  vehicle.  The Uber driver, who was much bigger than Plaintiff, wrapped his arms around her as if

9  he were hugging her, but then quickly worked his hands downward and groped Plaintiff's

10  buttocks. This sexual assault humiliated, degraded, violated, and robbed Plaintiff Doe 3 of her

11  dignity and personal safety.

12

13  38.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 3

14  being sexually assaulted.

15  39.     By failing to take reasonable steps to confront the problem of multiple rapes and

16  sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the

17  safety of its passengers, including Plaintiff Doe 3, has breached its duty of reasonable care, and

18  has breached the implied and express covenants arising from its contract with its passengers.

19

20  40.     The Uber driver assaulted Plaintiff Doe 3 in the course and scope of his

21  employment with Uber and while he was still under Uber's direction and control. These acts

22  caused Plaintiff Doe 3 pain and suffering that persists to this day.

23  41.     The Uber driver who assaulted Plaintiff Doe 3 was acting on behalf of, for the

24  benefit of, at the direction of, and within the course and scope of employment with Uber and

25  engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a

26  tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App,

27  directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for

28

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   both the pickup of Plaintiff and transportation to her destination, and much more, as discussed

2   below.  Uber derived a monetary benefit from every ride assigned to Uber drivers through its app,

3   including the Plaintiff's ride during which she was sexually assaulted.

4                              **B. The Attack on Plaintiff Doe 4**

5         42.     In or around June 2020, Plaintiff Doe 4 ordered an Uber. During the ride, the Uber

6   driver, whose Uber profile name was Jose, made lewd and inappropriate comments to Plaintiff,

7   solicited her for sex, offering to pay her whatever he had to get Plaintiff to sleep with him, and

8   groped Plaintiff's leg. Plaintiff was so uncomfortable she contacted her husband via Facetime. At

9   the end of the ride, Uber driver would not let Plaintiff out of the car for several minutes until he

10  heard Plaintiff's husband say he was going to call the police. As Plaintiff was exiting the car, Uber

11  driver grabbed Plaintiff's arm and groped her buttocks.  This False imprisonment and sexual

12  assault humiliated, degraded, violated, and robbed Plaintiff Doe 4 of her dignity and personal

13  safety.

14        43.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 4

15  being falsely imprisoned and sexually assaulted.

16        44.     By failing to take reasonable steps to confront the problem of multiple rapes and

17  sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the

18  safety of its passengers, including Plaintiff Doe 4, has breached its duty of reasonable care, and

19  has breached the implied and express covenants arising from its contract with its passengers.

20        45.     The Uber driver assaulted Plaintiff Doe 4 in the course and scope of his

21  employment with Uber and while he was still under Uber's direction and control. These acts

22  caused Plaintiff Doe 4 pain and suffering that persists to this day.

23        46.     The Uber driver who assaulted Plaintiff Doe 4 was acting on behalf of, for the

24  benefit of, at the direction of, and within the course and scope of employment with Uber and

25  engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

9

tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below. Uber derived a monetary benefit from every ride assigned to Uber drivers through its app, including the Plaintiff's ride during which she was falsely imprisoned and sexually assaulted.

### C. The Attack on Plaintiff Doe 5

47.     In or about June 2019, Plaintiff Doe 5 was out with a co-worker. Plaintiff was intoxicated, so the co-worker used Plaintiff's phone to order an Uber to take Plaintiff home. During the long ride to Plaintiff's home, the Uber driver made inappropriate comments about Plaintiff's appearance. He then pulled over and without Plaintiff's consent, groped Plaintiff's waist, hips and thigh and forcefully kissed Plaintiff. Plaintiff resisted and pushed the driver away as best she could. The Uber driver then drove Plaintiff home. Upon arrival, the Uber driver took Plaintiff's phone and gave himself a 5-star review. This sexual assault humiliated, degraded, violated, and robbed Plaintiff Doe 5 of her dignity and personal safety.

48.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 5 being sexually assaulted.

49.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Plaintiff Doe 5, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

50.     The Uber driver assaulted Plaintiff Doe 5 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff Doe 5 pain and suffering that persists to this day.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

51.     The Uber driver who assaulted Plaintiff Doe 5 was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.  Uber derived a monetary benefit from every ride assigned to Uber drivers through its app, including the Plaintiff's ride during which she was sexually assaulted.

**D. The Attack on Plaintiff Doe 6**

52.     In or about May 2019, Plaintiff Doe 6 ordered an Uber to take her home. Along the way Plaintiff decided to stop at a bar because it was the Cinco de Mayo holiday, so she asked the Uber driver to let her out in front of a bar she saw instead of taking her home. The Uber driver did not stop at the bar entrance but rather proceeded to drive to the back of the building.  When the car stopped, Plaintiff tried to open the door, but it was locked.  Rather than let Plaintiff out of the vehicle, The Uber driver began groping Plaintiff in a sexual manner. Plaintiff tried to push him away and told him repeatedly to stop, but the driver continued, telling Plaintiff she had asked for it because of what she was wearing. Then the Uber driver managed to climb on top of Plaintiff, pinning both of her wrists against the seat. When the driver let go with one hand, so he could continue molesting Plaintiff, she was able to free herself and exit the car through the driver's side door.  Plaintiff reported this sexual assault to the police and Uber.  This false imprisonment and sexual assault humiliated, degraded, violated, and robbed Plaintiff Doe 6 of her dignity and personal safety.

53.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 6 being falsely imprisoned and sexually assaulted.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

54.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Plaintiff Doe 6, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

55.     The Uber driver assaulted Plaintiff Doe 6 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff Doe 6 pain and suffering that persists to this day.

56.     The Uber driver who assaulted Plaintiff Doe 6 was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.  Uber derived a monetary benefit from every ride assigned to Uber drivers through its app, including the Plaintiff's ride during which she was falsely imprisoned and sexually assaulted.

**E. The Attack on Plaintiff Doe 7**

57.     In or around June 2019, Plaintiff Doe 7 ordered an Uber to take her home from work. During the ride, the Uber driver made inappropriate comments to Plaintiff regarding her appearance. The driver then deviated from the route to her intended destination and ended terminated the ride on the Uber App in the middle of the ride. Throughout the ride, Uber driver forcibly grabbed Plaintiff's arm, placed her hand on his groin, and repeatedly groped Plaintiff's upper thigh. Once the Uber driver arrived outside Plaintiff's home, he grabbed Plaintiff by the arm and the back of her neck pushing her towards him, forcibly kissing her on her face and neck. He continued groping her inner thighs before she was able to open the car door and run away.

Following the attack, the Uber driver lingered outside her house for the rest of the day, showed up outside her apartment the next two nights, and sent her messages on Facebook. This false imprisonment, sexual assault, and stalking, humiliated, degraded, violated, and robbed Plaintiff Doe 7 of her dignity and personal safety.

58.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 7 being falsely imprisoned, sexually assaulted, and stalked.

59.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Plaintiff Doe 7, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

60.     The Uber driver assaulted Plaintiff Doe 7 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff Doe 7 pain and suffering that persists to this day.

61.     The Uber driver who assaulted Plaintiff Doe 7 was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.  Uber derived a monetary benefit from every ride assigned to Uber drivers through its app, including the Plaintiff's ride during which she was kidnapped and sexually assaulted.

**F. The Attack on Plaintiff Doe 8**

62.     In or around June 2019, Plaintiff Doe 8 ordered an Uber. During the ride, Uber driver made inappropriate comments to Plaintiff about her appearance and asked her for her phone

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

number. When Plaintiff refused to give it to him, the Uber driver forcibly grabbed the back of Plaintiff's neck, interlaced his fingers through her hair, and demanded to have her phone number. Plaintiff pushed Uber driver's hands away from her and demanded he stop the car so that she could exit the vehicle.  As soon as they reached a stoplight, Plaintiff fled from the vehicle. As she did, the Uber driver groped her buttocks. This sexual assault humiliated, degraded, violated, and robbed Plaintiff Doe 8 of her dignity and personal safety.

63.     Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 8 being sexually assaulted.

64.     By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Plaintiff Doe 8, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

65.     The Uber driver assaulted Plaintiff Doe 8 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff Doe 8 pain and suffering that persists to this day.

66.     The Uber driver who assaulted Plaintiff Doe 8 was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.  Uber derived a monetary benefit from every ride assigned to Uber drivers through its app, including the Plaintiff's ride during which she was sexually assaulted.

///

## G. The Attack on Plaintiff Doe 9

67.    Plaintiff Doe 9's acquaintance ordered her an Uber to take her from Oakdale to Coon Rapids Minnesota.  Once she was in the vehicle, the Uber driver made lewd and inappropriate comments about Plaintiff's breasts. He was also smoking marijuana and offered some to Plaintiff, which she refused.  Once they were on the highway, when it would be impossible for Plaintiff to flee from the vehicle, the Uber driver started rubbing Plaintiff's legs in an inappropriate and sexual manner, and then groped her breast and played with her nipple without her consent.  When Plaintiff was exiting the vehicle, the Uber driver gave Plaintiff his phone number.  Plaintiff immediately called Uber to report the incident. This sexual assault humiliated, degraded, violated, and robbed Plaintiff Doe 9 of her dignity and personal safety.  While Plaintiff Doe 9 does not recall the exact date this ride and assault took place, this information is available to Uber based on Doe 9's reporting of the incident to Uber right after it happened.

68.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 9 being sexually assaulted.

69.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Plaintiff Doe 9, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

70.    The Uber driver assaulted Plaintiff Doe 9 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff Doe 9 pain and suffering that persists to this day.

71.    The Uber driver who assaulted Plaintiff Doe 9 was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below.  Uber derived a monetary benefit from every ride assigned to Uber drivers through its app, including the Plaintiff's ride during which she was sexually assaulted.

### H. The Attack on Plaintiff Doe 10

72.    In or around June 2019, Plaintiff Doe 10 ordered an Uber.  During the ride, the Uber driver pulled off the highway onto a deserted side road, stopped the car and started touching Plaintiff's legs without her consent in an inappropriate and sexual manner.  When Plaintiff told Uber driver to stop, he put his hand over her mouth pinning her down against the seat. He proceeded to pull down her pants and forcefully penetrated Plaintiff with his fingers, causing her to bleed.  Uber driver noticed the blood and became very angry at Plaintiff for getting his seat dirty. Before taking Plaintiff home, he hit her hard in the face then continued to stalk Plaintiff for weeks to prevent her from reporting the assault and battery. This depraved attack humiliated, degraded, violated, and robbed Plaintiff Doe 10 of her dignity and personal safety.

73.    Uber collected and retained a fee for the Uber trip that resulted in Plaintiff Doe 10 being kidnapped, falsely imprisoned, sexually assaulted, battered, and stalked.

74.    By failing to take reasonable steps to confront the problem of multiple rapes and sexual assaults of Uber passengers by Uber drivers, Uber has acted in conscious disregard of the safety of its passengers, including Plaintiff Doe 10, has breached its duty of reasonable care, and has breached the implied and express covenants arising from its contract with its passengers.

75.    The Uber driver assaulted Plaintiff Doe 10 in the course and scope of his employment with Uber and while he was still under Uber's direction and control. These acts caused Plaintiff Doe 10 pain and suffering that persists to this day.

The Uber driver who assaulted Plaintiff Doe 10 was acting on behalf of, for the benefit of, at the direction of, and within the course and scope of employment with Uber and engagement by Uber. Uber provided the Uber driver with access to its ride-sharing app platform, a tool necessary for Uber drivers to perform the work Uber assigned. Uber, through the Uber App, directed the Uber driver regarding the location of the pickup, time of the pickup, and routes for both the pickup of Plaintiff and transportation to her destination, and much more, as discussed below. Uber derived a monetary benefit from every ride assigned to Uber drivers through its app, including the Plaintiff's ride during which she was kidnapped, falsely imprisoned, sexually assaulted, battered and stalked.

**B. Uber**

76.　　Uber is a transportation company. Its core business is providing transportation to the public at large through its network of drivers. It connects its drivers to the public through the Uber App. Anyone from the public may download the Uber App for free. Using the app, a customer may request a ride from one of Uber's drivers for a standardized charge unilaterally set by Uber. Uber directs its drivers to pick up the passengers and transport them to their destinations.

77.　　At the time Plaintiffs were sexually assaulted, harassed, kidnapped, physically assaulted, falsely imprisoned, stalked and/or otherwise attacked, Uber was a common carrier as it provided transportation to the general public. It held itself out to the public generally and indifferently to transport persons from place to place for profit.

78.　　Uber provides transportation through a digital application made available to the general public for the purpose of transporting its users, the passengers, from place to place for profit. Uber has widely offered its services to the general public and charges standard fees for its services through its application. Uber does not allow discrimination against passengers on the basis of race, color, national origin, religion, gender, gender identity, physical or mental disability, medical condition, marital status, age, or sexual orientation. Any member of the public can use Uber's services for transportation.

79.　　Uber is a common carrier under California Civil Code § 2168 and the common

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

law.[2] Uber holds itself out to the public generally and indifferently to transport persons from place to place for profit. As a common carrier, Uber owes its passengers, including Plaintiffs, a heightened duty of care, under both the common law and California Civil Code § 2100. Uber has an affirmative duty to protect its passengers from assault by one of its employees or contractors and is liable for its employees' or agents' assaults, regardless of whether such acts were committed within the course and scope of employment for Uber.

80.     As a common carrier, Uber's liability is not separable from the liability of Uber drivers. If an Uber driver is liable for any torts, Uber is also liable for those torts.

81.     Further, as a common carrier, under the common law, Uber has a non-delegable duty to safely transport its passengers from the place it picks them up to their destination. This duty cannot be delegated to Uber drivers. When an Uber driver assaults a passenger, Uber breaches this non-delegable duty.

82.     Uber drivers are largely nonprofessional, untrained, and use their own vehicles. Uber employs and engages its drivers, including Uber driver, in traditional at-will relationships, in which:

a.   Uber has the discretion to fire its drivers for any reason and at any time; that is, Uber maintains the right to discharge its drivers at will, and without cause;

b.   drivers are not charged a fee by Uber to apply to become employees;

c.   At all times relevant, there was no agreement between Uber and driver designating the driver as an independent contractor;

d.   drivers are not charged a fee to download the app or to receive notifications from Uber that customers want rides;

e.   Fare prices for rides are set exclusively by Uber;

f.   drivers have no input on fares charged to consumers;

g.   drivers are not permitted to negotiate with consumers on fares charged;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

---

[2] *See, e.g., Doe v. UBER Techs., Inc.*, 184 F. Supp.3d 774, 787 (N.D. Cal. 2016) ("Plaintiff's allegations support the claim that UBER 'offers to the public to carry persons,' thereby bringing it within California's definition of common carrier for tort purposes.").

h.  Uber can and does modify charges to consumers; for example, if Uber determines that a driver has taken a circuitous route to a destination;

i.  Uber takes a fee of every ride charged to a consumer;

j.  Uber retains control over customer-contact information;

k.  Uber controls its drivers' contacts with its consumer base and considers its consumer list to be proprietary information;

l.  In some instances, Uber controls the hours a driver works;

m.  drivers are not permitted to answer passenger inquiries about booking future rides outside of the Uber App;

n.  Driving for Uber is not a specialized skill;

o.  Uber's business model depends on having a large pool of non-professional drivers;

p.  drivers must abide by a list of regulations to drive for Uber;

q.  Uber requires its drivers to pick up Uber customers on the correct side of the street;

r.  Uber forbids its drivers from talking on their cell phones while the drivers are driving customers;

s.  Uber tracks drivers' speed and braking and sends drivers reports based on how many times the driver had to brake hard;

t.  Uber drivers are not allowed to ask Uber customers for their contact information;

u.  drivers who reject too many ride requests risk facing discipline, including suspension or termination;

v.  Consumers give feedback on rides they have taken, and rate drivers on a scale from one to five stars. These ratings are used by Uber to discipline and terminate drivers; and

w.  Such other acts of control that discovery will show.

83.  Uber actively markets itself as a safe company that provides safe rides. Both before 2014 and after, Uber actively and aggressively marketed the supposed safety of its transportation services.  These efforts continue to this day, and include email messages sent to every Uber customer, including all Plaintiffs named herein.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

84.     Over the years, Uber has launched a number of marketing campaigns specifically marketing its transportation services to young women who are too intoxicated to drive.

85.     Uber represented to its customers, including Plaintiffs, on its website all of the following:

a.  "How we help keep you safe – We're committed to helping you get where you want to go with confidence, whether it's building emergency features in the app or making it easy for you to check your ride."

b.  "Ride with confidence – The Uber experience was built with safety in mind. Through incident prevention tools, insurance coverage, and technology that keeps you connected, we're dedicated to helping you move safely and focus on what matters most."

c.  "Ride with confidence – Designing a safer ride – driver screenings – All potential drivers in the US must complete a screening before becoming an Uber driver-partner, and current drivers continue to be vetted for criminal offenses."

d.  "Ride with confidence – Designing a safer ride – On every trip, you can tap a button for safety tools and get help whenever you need it."

e.  "Ride with confidence – Designing a safer ride – An inclusive community – Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone."

f.  "Our commitment to safety – You deserve to be able to move safely. To look forward to the opportunities ahead. To be connected to people and places that matter most. Which is why we're focused on your safety, from setting new standards to developing technology with the goal of reducing incidents."

g.  "How safety is built into your experience – Safety features in the app – Tap a button for emergency assistance. Share your trip details with loved ones. Our technology helps put peace of mind at your fingertips."

h.  "How safety is built into your experience – An inclusive community – Millions of riders and drivers share a set of Community Guidelines, holding each other

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

20

accountable to do the right thing."

i.   "How safety is built into your experience – Coverage on every trip – We've put insurance from leading companies in place for every ride."

j.   "Building safer journeys for everyone – Rider safety – Uber driver-partners in the US go through a multi-point screening check for their driving and criminal history before they are authorized to take trips through the app. Every rider has access to safety features built into the app and a support team if you need them."

k.   "The future of safety – More than 200 Uber employees, from researchers and scientists to designers and engineers, are focused on building technology that puts safety at the heart of your experience."

l.   "Safe rides around the clock – Affordable, reliable transportation can help make roads safer. Need a late-night ride and can't drive yourself? Request a ride with Uber."

86.   Uber actively and publicly markets its transportation services to be safe and reliable services.

87.   Uber has cultivated an image among its customers of safety and superiority to public transportation and traditional taxis. Because of aggressive marketing, most Uber customers are generally unaware of the real risks associated with Uber rides and continue to believe a ride with Uber is a safer and better alternative.

88.   In 2016, Uber agreed to pay $28.5 million to settle a class action lawsuit over its fraudulent marketing of its security screening as "industry-leading."

89.   Riders, including Plaintiffs, reasonably rely on UBER DEFENDANTS' representations and promises regarding safety and security measures. Riders, including Plaintiffs, choose to ride with Uber as a result of this reliance.

90.   The UBER DEFENDANTS market Uber to female riders as a safer alternative to traditional taxis.

91.   The UBER DEFENDANTS market "driving change for women's safety" on their website to specifically represent and promote women's safety while using Uber, which states

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

"[s]exual assault and gender-based violence don't belong anywhere in our communities, which is why Uber is committed to help stop incidents before they happen".

92.    In 2015, Uber released a report with Mothers Against Drunk Driving "MADD" that states "The Uber App was created to ensure reliable access to safe rides." The report states that with Uber, intoxicated persons can find "a safe, reliable ride home" that is "always within reach."[3]

93.    The safe image that Uber aggressively cultivates suggests to customers, including Plaintiffs, that riding while intoxicated with Uber is safe. Uber does not inform riders, like Plaintiffs, that hailing a ride after drinking puts riders in peril from the drivers themselves. By marketing heavily to young women who have been drinking, and promising safe rides, Uber puts riders in peril.

94.    Uber knew its representations and promises about rider safety were false and misleading yet continued to allow riders to believe in the truth of these representations and promises and continued to profit from riders' reliance on those representations and promises.

95.    Unfortunately, an Uber driver sexually assaulting a passenger is not an isolated or rare occurrence. A safety report Uber released in December 2019, showed there were thousands of sexual assaults during Uber rides in 2018 alone.[4] Tony West, Uber's Chief Legal Officer, said in response to that report, the "numbers are jarring and hard to digest."[5]

96.    Uber employs a vast network of drivers. But, at all relevant times, Uber provided its drivers with inadequate training regarding sexual assault, sexual relations, sexually inappropriate behavior, sensitivity, and customer relations.

97.    Uber has also provided inadequate background checks and screening of its drivers. Among other things, it does not fingerprint its drivers, it does not run the applicant drivers against all available public databases, and it does not do international background checks.

98.    Uber lobbies state and local governments to limit what is required of Uber with respect to driver background checks.  Uber also lobbies local government entities to continue

---

[3] Uber and MADD Report, "More Options. Shifting Mindsets. Driving Better Choices," January 2015.
[4] New York Times, "Uber says 3,045 sexual assaults were reported in U.S. rides last year," December 5, 2019.
[5] *Id.*

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

allowing Uber to perform its own background checks of its driver applicants, rather than municipalities performing the more stringent screening they do for traditional taxi drivers.

99.     Uber has successfully persuaded lawmakers in several states, including California, to keep background check requirements for its drivers limited.

100.     As a direct result of Uber's lobbying efforts, those entities largely self-enforce hiring standards for their drivers. Whereas, in cities where municipalities perform the screening, such as in Houston, Texas and Seattle Washington, hundreds of driver applicants Uber approved are ultimately rejected by the municipality.

101.     Even where authorized to do so, Uber generally does not perform driver background checks and instead outsource the checks to a third-party vendor that often limits the extent of its background check and that does not verify the information provided by the applicant is accurate or complete. The turnaround time for an Uber background check is often under 36 hours.

102.     The application process to become an Uber driver is simple, fast, and designed to allow the company to hire as many drivers as possible while incurring minimal associated costs. Uber fought for and implemented a less robust hiring process knowing it would be at the expense of passenger safety.

103.     Although Uber claims its drivers are not employees, Uber engages its drivers as part of its business and the Uber drivers are charged with the responsibility of safely transporting Uber passengers to their destination.

**DELAYED DISCOVERY AND FRAUDULENT CONCEALMENT**

104.     The discovery rule applies to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence, should have known of the existence of their claims against Uber.

105.     Plaintiffs were not aware of the foreseeability of the sexual assault they each endured because Uber intentionally concealed the fact that Uber drivers had been sexually regularly assaulting women since at least 2014 and instead represented that Uber was a safe mode of transportation.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

106.    A reasonable investigation by Plaintiffs Doe 3, Doe 4, Doe 5, Doe 6, Doe 7, Doe 8, Doe 9, and Doe 10 at the time of their respective sexual assaults would not have revealed the factual basis of her causes of action against Uber.  This is because Uber, through marketing and more, took actions to conceal that its drivers regularly and frequently assaulted women. This is also because Uber has publicly claimed that it does not control its drivers and that its drivers are not Uber employees.  As such, none of the plaintiffs named herein was able to discover Uber's negligent or wrongful cause in bring the sexual assault about despite her reasonable diligence.

107.    Furthermore, the running of any statute of limitations has been equitably tolled by reason of Uber's intentional representations and fraudulent concealment and conduct.

108.    Through its affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the true risks associated with using the Uber App and riding in an Uber, specifically, the risk of being sexually assaulted.

109.    As a result of Uber's actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that Uber could be held liable for the risks its drivers posed as alleged herein and that those risks were the direct and proximate result of Uber's acts and omissions.

110.    In the case of each plaintiff, she did not learn of Uber's negligent or wrongful cause in bringing about the sexual assault until after she saw advertisements for legal help, so her claims are not time barred.

111.    Furthermore, Uber is estopped from relying on any statute of limitations because of its concealment of the truth about its failure to adequately employ measures to ensure the safety of its passengers. Uber had a duty to disclose the true character, quality and nature of its background checks and the incidence of Uber drivers sexually assaulting passengers, because this was non-public information which Defendants had, and continue to have, exclusive control, and because Defendants knew this information was not available to Plaintiffs, Uber passengers/customers and/or the general public.

///

///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

## CAUSES OF ACTION

## COUNT ONE– GENERAL NEGLIGENCE
### *(All Plaintiffs)*

112.    The preceding paragraphs of this Complaint are incorporated by reference.

113.    By providing transportation to the general public using its application and network of drivers, Uber owed a duty to act with due and reasonable care towards the public and in particular its own passengers, including Plaintiffs.

114.    Uber has been on notice that its drivers have been sexually harassing, sexually assaulting, and raping its passengers since at least 2014.  Uber was aware or should have been aware that some Uber drivers would continue to sexually assault, stalk, harass, kidnap, physically assault, rape, and/or otherwise attack their vulnerable Uber patrons and passengers.

115.    Since learning of the sexual assaults perpetrated by its drivers, Uber never adapted or improved its safety procedures in any meaningful way.

116.    Uber does not require video monitoring of its drivers that cannot be turned off, nor does it provide emergency notification to Uber and the authorities when a driver drastically veers off course from the passenger's destination, abruptly cancels the ride, or ends the ride at the intended destination but GPS data indicates the passenger remains in the car for a significant period of time.

117.    At all times relevant, Uber was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiffs, to rely on Uber as a safe means of transportation.  In doing so, Uber failed to warn passengers, including Plaintiffs, of the possibility of being sexually assaulted by an Uber driver.

118.    At the time each Plaintiff named herein was assaulted, Uber did not require sexual harassment/assault training for its drivers, nor did it have any policies in place for immediate termination if a driver engages in sexual misconduct.

119.    Uber does not cooperate with the police when a driver commits an illegal sexual attack on its passengers.  Despite having the express right to disclose driver information at Uber's sole discretion, Uber requires that extensive standards be met before the company will even

consider law enforcement requests for information.  Even after a report of sexual assault has been made, Uber generally requires a subpoena before it will release information.  Uber's policy of noncooperation discourages police agencies from making recommendations to District Attorneys' offices to file complaints against Uber drivers, and provides Uber's predatory drivers with tacit assurance that their illegal attacks will not be detected by law enforcement.

120.    When hiring new drivers, Uber does not verify driver identities with biometric background checks.  Uber does not correct for false negatives created by its name-based screening procedures.  Uber does not provide industry-standard background checks which would provide the most comprehensive means of screening applicant drivers.  Uber does not invest in continuous monitoring of its drivers and is not immediately alerted when one of its drivers is implicated in criminal acts.

121.    Uber does not have a consistent, reliable system for addressing passenger reports of sexual assault by its drivers and continues to let dangerous predators drive for and earn money for Uber.

122.    For the above reasons and others, Uber breached its duty of reasonable care to Plaintiffs.

123.    As a legal and direct result of Uber's aforementioned conduct and omissions, Plaintiffs were sexually assaulted, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked by its drivers which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety.  The assaults on Plaintiffs caused them to suffer psychological and physical harm from which they may never fully recover.

124.    As a direct and legal result of Uber's general negligence, Plaintiffs suffered damages, both economic and general, non-economic damages according to proof.

## COUNT TWO – NEGLIGENT HIRING, SUPERVISION, AND RETENTION
### *(All Plaintiffs)*

125.    Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

126.    Uber engaged and retained or otherwise employed each Uber driver who sexually

assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked Plaintiffs as described above ("Uber Driver" or collectively "Uber Drivers").

127.    Uber did not interview, check the references of, provide training to, or advise Uber Drivers of any anti-sexual assault policies when hiring each of them.  Uber had no reasonable basis for believing Uber Drivers were fit to drive vulnerable women around, particularly at night, and failed to use reasonable care in determining whether each driver was fit for the task.  Uber should have known of each Uber Driver's unfitness but failed to use reasonable care to discover his unfitness and incompetence.

128.    Despite failing to reasonably endeavor to investigate each Uber Driver's incompetence for transporting vulnerable and or intoxicated women late at night in a moving vehicle, Uber hired said drivers to do exactly that.

129.    Uber knew or should have known that assigning the task of transporting vulnerable passengers late at night to an inadequately screened driver created an unreasonable risk of harm to Uber's passengers, including Plaintiffs, particularly when Uber had been on notice of the string of sexual assaults committed by Uber's drivers.

130.    Uber failed to employ measures to adequately supervise its drivers.

131.    Uber failed to adequately record, investigate, and respond to passenger reports of unsafe conduct such as sexual harassment and sexual assault by Uber drivers.

132.    Uber was negligent in failing to terminate drivers it knew or reasonably should have known were a threat to passengers, including but not limited to Plaintiffs and other vulnerable female passengers traveling alone.

133.    Uber Drivers were and/or became unfit to perform the work for which they were hired as they improperly and illegally took advantage of Plaintiffs when they each attempted to use the service for a safe ride to their destination, thereby causing them psychological and or physical harm.

134.    Because of Uber Drivers' unfitness to perform the task of transporting Plaintiffs, Plaintiffs were sexually assaulted, sexually battered, kidnapped and or otherwise attacked, all of which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety.

Levin Simes Abrams LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   135.    Uber's negligence in hiring, retaining, and or supervising Uber drivers caused

2   Plaintiffs to be sexually assaulted, stalked, harassed, kidnapped, physically assaulted, raped,

3   and/or otherwise attacked.  In each instance, the Plaintiff involved was humiliated, degraded,

4   violated, and robbed of her dignity and personal safety.  The depraved attack on Plaintiffs caused

5   Plaintiffs to suffer both physical and or psychological harm from which they may never fully

6   recover.

7   136.    As a direct and legal result of Defendants' negligent supervision, hiring, and

8   retention of Uber drivers, Plaintiffs have suffered damages, both economic and general, non-

9   economic damages according to proof.

10

11          **COUNT THREE – COMMON CARRIER NEGLIGENCE**
12                        *(All Plaintiffs)*

13   137.    Plaintiffs hereby incorporate by reference the preceding causes of action and

14   factual allegations.

15   138.    At the time each Plaintiff described herein was sexually assaulted, stalked,

16   harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked, Uber was a common

17   carrier as it provided transportation to the general public.

18   139.    Uber provides transportation through a digital application made available to the

19   general public for the purpose of transporting its users, the passengers, from place to place for

20   profit.  Uber has widely offered its services to the general public and charges standard fees for its

21   services through its application.  Uber does not allow discrimination against passengers on the

22   basis of race, color, national origin, religion, gender, gender identity, physical or mental disability,

23   medical condition, marital status, age, or sexual orientation.  Any member of the public can use

24   Uber's services for transportation.

25   140.    As a common carrier, Uber must carry its passengers, including Plaintiffs, safely.

26   141.    Uber has a duty to employ the utmost degree of care and diligence that would be

27   expected of a very cautious company.  Uber has a duty to do all that human care, vigilance, and

28   foresight reasonably can do under the circumstances to avoid harm to passengers, including

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  Plaintiffs.

2    142. Uber must use reasonable skill to provide everything necessary for safe

3  transportation, in view of the transportation used and the practical operation of the business.

4    143. Despite complaints to Uber of sexual assaults committed by Uber drivers and

5  lawsuits against Uber for sexual assault, Uber has failed to implement safety precautions that

6  would adequately address its sexual assault problem.

7    144. Uber does not provide a consistent and reliable way for passengers to report sexual

8  abuse and rape.

9    145. Uber does not warn passengers of the dangers of riding with Uber and fails to warn

10  passengers of past complaints regarding Uber drivers.

11    146. Uber does not have an effective program in place to deal with the sexual predator

12  crisis posed by some of its drivers.

13    147. Uber knows its female passengers are in a uniquely vulnerable situation enclosed in

14  a moving vehicle and that a subset of its drivers are sexual predators.

15    148. Uber has not exercised reasonable care to protect its passengers from harassment,

16  assault, and rape by Uber's drivers.

17    149. Uber has not exercised the utmost degree of care in order to protect its passengers

18  from the danger posed by sexual predators who drive for Uber.  If Uber had used the highest

19  degree of care, Uber could have prevented or dramatically reduced the likelihood of the sexual

20  assault of its passengers, including Plaintiffs.

21    150. Uber failed to safely transport Plaintiffs.

22    151. Uber failed to use the utmost care and vigilance to protect Plaintiffs from its own

23  drivers who sexually assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or

24  otherwise attacked Plaintiffs while they were being transported by Uber.

25    152. Uber failed to take reasonable precautions to protect its vulnerable female

26  passengers, including Plaintiffs, from the foreseeable and known risk of sexual assault, harassment

27  and/or rape by its drivers.  If Uber had used the highest degree of care, Uber could have prevented

28  or reduced the likelihood of the sexual assault of its passengers, including Plaintiffs.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

153.    As a legal and direct result of the aforementioned conduct and omissions of Uber, Plaintiffs were sexually assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety.  The depraved attacks on Plaintiffs caused Plaintiffs to suffer both physical and or psychological harm from which they may never fully recover.

154.    As a direct and legal result of Uber's negligence as a common carrier, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

## COUNT FOUR –  NEGLIGENT FAILURE TO WARN
### (All Plaintiffs)

155.    Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

156.    Uber's conduct created a risk of physical or emotional harm to its passengers, including Plaintiffs.

157.    In operating its business, Uber knew and had reason to know that its passengers were at risk of sexual assault and abuse by Uber's drivers since at least 2014.  Since then, Uber has received frequent passenger complaints about driver misbehavior, has been notified of police investigations of drivers' criminal conduct while acting within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and sexual assault of Uber's passengers by Uber's drivers.

158.    Despite the knowledge of the danger its enterprise created, Uber prioritized profits over passenger safety and did not alert its passengers, including Plaintiffs, to the risk of sexual assault by Uber drivers.  In fact, Uber continued to market itself as a service that provides "safe" rides, even to unaccompanied and/or intoxicated passengers, knowing sufficient measures had not been employed to keep passengers safe from being sexually assaulted.

159.    Uber itself represented to its passengers that riding with Uber is safe, implying it is free of risk from sexual assault.

160.    Uber did not warn that its criminal background checks of Uber drivers were limited, nor did it warn that it sometimes allows drivers to continue driving for Uber even after a

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1    passenger reports to Uber she was sexually assaulted.

2        161.    Uber had reason to know that passengers would be unaware of the risk of sexual

3    assault by Uber drivers.

4        162.    A warning to its passengers that they were at risk of sexual assault by Uber drivers

5    would have reduced the risk of harm to passengers, including Plaintiffs, who could have arranged

6    for alternative transportation or taken additional safety precautions and avoided the assault they

7    suffered at the hands of her Uber driver.

8        163.    Plaintiffs would not have ridden alone in an Uber had Uber provided an adequate

9    warning regarding the risk of sexual assault by an Uber driver.

10       164.    As a legal and direct result of Uber's aforementioned conduct and omissions,

11   Plaintiffs were sexually assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or

12   otherwise attacked, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity

13   and personal safety.  The depraved attacks on Plaintiffs caused Plaintiffs to suffer both physical

14   and or psychological harm from which they may never fully recover.

15       165.    As a direct and legal result of Defendants' negligent failure to warn, Plaintiffs have

16   suffered damages, both economic and general, non-economic damages, according to proof.

17   **COUNT FIVE – VICARIOUS LIABILITY/LIABILITY FOR THE TORTS OF UBER'S**
     **DRIVERS**
18                                   *(All Plaintiffs)*

19       166.    Plaintiffs hereby incorporate by reference the preceding causes of action and

20   factual allegations.

21       167.    Uber is vicariously liable for the torts of its drivers through the theories of

22   *respondeat superior*, nondelegable duties, agency, and ostensible agency.  Uber's liability for the

23   acts of its drivers is not contingent upon the classification of its drivers as employees.

24       168.    Under the doctrine of *respondeat superior*, Uber is responsible for the torts of its

25   employees committed within the scope of employment.  The modern rationale for the theory is

26   that an employer who profits from an enterprise which, through the torts of his employees, causes

27   harm to others should bear the costs of the injury instead of the innocent injured Plaintiffs.

28       169.    Uber profits from transporting vulnerable passengers late at night.  Uber

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

encourages intoxicated passengers to use its services.  At the same time, Uber does not take reasonable steps to protect its passengers or warn them of the dangers of riding with Uber.  Uber, and not the victims of Uber's negligence, willful wrongdoing and intentional omissions at the expense of passenger safety, should bear the costs of injuries that result from torts such as sexual assault, kidnapping, and rape.

170.    Uber drivers are employees and agents of Uber.  Uber reserves the right to control the activities of Uber drivers.  Uber controls the prices charged to customers, controls contact with the customer base, controls the ability of a driver to see where he will be driving before he accepts a ride, and reserves the right to terminate drivers with or without cause.

171.    The sexual assault or other harm each Plaintiff suffered was perpetrated by the respective Uber driver within the scope of his employment and authority.  The kidnapping, assault and/or rape of intoxicated and unaccompanied women who have been placed in an improperly screened Uber driver's car with little to no supervision is incidental to and a foreseeable result of the act of transporting passengers.

172.    Uber may maintain that its drivers are contractors and not employees. Nevertheless, whether Uber drivers are characterized as contractors, employees or agents, Uber has a non-delegable duty to transport its passengers safely.

173.    The doctrine of nondelegable duty recognizes that for public policy reasons, certain duties cannot be delegated to a third party.   It operates to ensure that when a harm occurs the injured party will be compensated by the party whose activity caused the harm and who may therefore properly be held liable for the acts of his agent, whether the agent was an employee or an independent contractor.  The doctrine recognizes that an entity may not delegate its duties to a contractor in order to evade its own responsibilities.  This is especially so when allowing delegation would incentivize the employers to hire incompetent contractors in order to further the employer's pecuniary interests.[6]

---

[6] See, for example, *Barry v. Raskov* (Ct. App. 1991) 232 Cal. App. 3d 447, 454, where the court recognized that allowing a broker to delegate the liability for the fraudulent torts of its contractor property appraiser would incentivize the broker to hire potentially insolvent contractors, to the detriment of the public.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

174. In advertising to passengers that Uber provides them a safe ride to their destinations and by profiting off women who use Uber for that very purpose but then are attacked, Uber has a duty to its passengers that cannot be delegated. To allow Uber to delegate the liability for the assaults committed by its drivers to anyone else would encourage Uber to continue to utilize the cheapest, fastest, and most haphazard safety procedures. Uber would be disincentivized from hiring only competent drivers, since the more drivers Uber has, the more money Uber makes.

175. Further, Uber drivers act as agents of and operate as extensions of Uber. Uber drivers represent Uber's business and further Uber's pecuniary interests.

176. Uber drivers display the Uber logo when interacting with passengers, and in many cases Uber drivers are the only people with whom Uber's passengers have direct contact. Uber drivers provide the service that Uber claims to provide-- transportation.

177. By allowing Uber drivers to represent Uber's business, Uber creates the impression that its drivers, including Uber Drivers, were Uber's employees and/or agents.

178. Plaintiffs each reasonably believed that her Uber driver was an employee or agent of Uber, and, relying on this belief, got in a vehicle with him in exchange for a fee and suffered harm as a result of her contact with Uber Driver.

179. For these reasons and others, Uber is vicariously liable for the tortious acts of its drivers, regardless of whether Uber's drivers are employees, agents, apparent agents, or contractors of Uber.

180. As a direct and legal result of Uber Drivers' tortious conduct, Plaintiffs were sexually assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety. The depraved attacks on Plaintiffs caused Plaintiffs to suffer both physical and or psychological harm from which they may never fully recover.

181. As a direct and legal result of Uber Drivers' tortious conduct for which Uber is legally liable, Plaintiffs have suffered economic and general, non-economic damages according to proof.

///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1

## COUNT SIX – VICARIOUS LIABILITY FOR SEXUAL ASSAULT
### *(All Plaintiffs)*

2

3      182.    Plaintiffs hereby incorporate by reference the preceding causes of action and

4  factual allegations.

5      183.    At the time each Plaintiff herein was sexually assaulted, the respective Uber Driver

6  intended to cause harmful and offensive contact with that Plaintiff, and each Plaintiff was in

7  reasonable apprehension of imminent harmful and offensive contact.  Uber Drivers each

8  intentionally and recklessly did acts which placed Plaintiffs in apprehension of imminent harm,

9  including but not limited to: sexual battery, and in some instances fear of being raped.

10     184.    The Uber Drivers committed these tortious and wrongful acts while acting in the

11 course and scope of their employment with Uber as an employee/agent of Uber.  Therefore, Uber

12 is liable for Uber Drivers' sexual assaults of Plaintiffs and is responsible for damages caused by

13 said conduct under the principles of vicarious liability, including the doctrine of *respondeat*

14 *superior*.  Even if Uber Driver(s) had not been an employee, Uber's duty to provide transportation

15 free of assault is nondelegable and Uber is liable for Uber Drivers' actions, because to allow Uber

16 to delegate its duty of providing the safe transportation it promises would incentivize Uber to

17 create a greater risk of harm to the public.

18     185.     For these reasons and others, Uber is vicariously liable for Uber Drivers' sexual

19 assault of Plaintiffs.

20     186.    As a direct and legal result of Uber Drivers' sexual assault, Plaintiffs were

21 humiliated, degraded, violated, and robbed of their dignity and personal safety.  The depraved

22 attack on Plaintiffs caused Plaintiffs to suffer both physical and psychological harm from which

23 they may never fully recover.

24     187.    As a direct and legal result of Uber drivers' sexual assault for which Uber is

25 vicariously liable, Plaintiffs have suffered economic and general, non-economic damages

26 according to proof.

27 ///

28 ///

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1

2

### COUNT SEVEN – SEXUAL BATTERY
#### *(All Plaintiffs)*

3

188.    Plaintiffs hereby incorporate by reference the preceding causes of action and

4

factual allegations.

5

189.    Each Uber Driver made harmful and offensive contact with the Plaintiff he was

6

transporting.  None of the Plaintiffs consented to the contact.  Plaintiffs were harmed and offended

7

by the respective Uber Driver's contact with her.  Each Uber Driver intentionally and recklessly

8

did acts that resulted in harmful contact with each respective Plaintiff's person, including but not

9

limited to sexual molestation and or penetration, touching of a sexual body part without consent,

10

touching of Plaintiff in a sexual manner, forced kissing without consent, and or forcing Plaintiff to

11

touch the driver in a sexual manner.

12

190.    As a result of Uber Drivers' sexual battery of Plaintiffs, which occurred while in

13

the course and scope of Uber Drivers' employment, Plaintiffs were humiliated, degraded, violated,

14

and robbed of their dignity and personal safety.  The depraved attack on Plaintiffs caused Plaintiffs

15

to suffer both physical and psychological harm from which they may never fully recover.

16

191.    As a legal result of Uber Drivers' sexual battery, and Uber's liability and vicarious

17

liability for the same, Plaintiffs have suffered damages, both economic and general, non-economic

18

damages according to proof.

19

### COUNT EIGHT –  FALSE IMPRISONMENT
#### *(As to Plaintiffs Doe 4, 6 and 10 only)*

20

192.    Plaintiffs hereby incorporate by reference the preceding causes of action and

21

factual allegations.

22

193.    At the time of the above-described Uber rides and accompanying sexual assaults,

23

the above-listed Plaintiffs were each held against her will by force and was physically prevented

24

from escaping.

25

194.    As such, Plaintiffs were falsely imprisoned in violation of their rights.

26

195.    As a legal result of Uber drivers' false imprisonment, which occurred while in the

27

course and scope of Uber drivers' employment, Plaintiffs were robbed of their dignity and

28

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1    personal safety.  The false imprisonment of Plaintiffs caused Plaintiffs to suffer psychological

2    harm from which they may never fully recover.

3        196.    As a legal result of Uber drivers' false imprisonment of Plaintiffs and Uber's

4    liability and vicarious liability for the same, the above Plaintiffs have suffered damages, both

5    economic and general, non-economic damages according to proof.

6              **COUNT NINE – INTENTIONAL MISREPRESENTATION**
                          *(All Plaintiffs)*
7

8        197.    Plaintiffs hereby incorporate by reference the preceding causes of action and

9    factual allegations.

10       198.    At the time each Plaintiff was sexually assaulted, she had downloaded the Uber

11   application and had an account with Uber.

12       199.    Uber represented to Plaintiffs and the general public that safety was Uber's top

13   priority, and it was Uber's goal to make every ride safe, comfortable, and reliable.  At the same

14   time, Uber already knew that a number of its drivers had preyed on vulnerable female passengers

15   by sexually molesting, assaulting and/or raping them.

16       200.    Uber made intentional misrepresentations of fact to all users of the Uber app,

17   including Plaintiffs, that were known by Uber to be false including the false statements Uber

18   made, stating it would provide Plaintiffs with a safe ride to their destinations.

19       201.    These representations regarding safety were made to Uber customers, including

20   Plaintiffs, through periodic emails Uber sent to its customers, social media advertisements, and

21   Uber's own website.  Plaintiffs relied upon several advertisements and statements wherein Uber

22   proclaimed it would provide a safe ride.  Plaintiffs read Uber's self-promoting statements

23   regarding safety both before and after Plaintiffs were sexually assaulted by Uber Drivers.

24       202.    Prioritizing profits over passenger safety, Uber made these intentional

25   misrepresentations of material fact to induce women, including Plaintiffs, into using Uber's

26   services.

27       203.    Uber made these representations to Plaintiffs and the general public despite

28   knowing it had chosen not to take the measures necessary to provide a safe ride to their intended

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

destination and as a result, continued sexual assault of its passengers by its drivers was a foreseeable occurrence.

204.    Uber made these representations to induce women like Plaintiffs into using Uber's services and to derive profit from women like Plaintiffs.

205.    In ordering and getting into an Uber vehicle, each Plaintiff reasonably relied on Uber's representations that it would get her safely to her destination.

206.    In trusting and relying on Uber's representations, Plaintiffs were placed in a uniquely vulnerable position that was taken advantage of by Uber's employees, Uber Drivers, who kidnapped and sexually molested and assaulted Plaintiffs.

207.    As a legal result of Uber's intentional misrepresentations, Plaintiffs were sexually assaulted, sexually battered, kidnapped and or otherwise attacked, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety.  The depraved attack on Plaintiffs caused Plaintiffs to suffer both physical and psychological harm from which they may never fully recover.

208.    As a legal result of Uber's intentional misrepresentations, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

## COUNT TEN – NEGLIGENT MISREPRESENTATION
### (All Plaintiffs)

209.    Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

210.    Uber represented to Plaintiffs and the general public that safety is Uber's top priority, and that it is Uber's goal to make every ride safe, comfortable, and reliable.  At the time of the assaults alleged herein, Uber knew that a number of its drivers had previously preyed on vulnerable female passengers by sexually molesting, assaulting, and/or raping them.

211.    Uber continued to represent that its services were safe to further Uber's own pecuniary interests.

212.    In representing to its customers/users that its services were safe, Uber had a duty to provide correct and accurate information about the actual safety of its services.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

213.    Uber knew or should have known that it could not provide the safe ride that it represented it could.

214.    Knowing of the incidence of sexual assault of its passengers by its drivers and knowing that Uber had not implemented adequate precautions, Uber had no reasonable grounds for believing that it could provide Plaintiffs and other passengers a safe ride home as represented.

215.    In getting into the Uber, each Plaintiff reasonably relied on Uber's representations that it would get her safely to her intended destination.

216.    In trusting and relying on Uber's representations, Plaintiffs were placed in a uniquely vulnerable position that were taken advantage of by Uber's employees, Uber drivers, who kidnapped, sexually molested and assaulted Plaintiff before handing her off to be raped by at least one stranger.

217.    As a legal result of Uber's aforementioned conduct, Plaintiffs were sexually assaulted, sexually battered, kidnapped and or otherwise attacked by their Uber drivers, which humiliated, degraded, violated, and robbed them of their dignity and personal safety.  The depraved attack on Plaintiffs caused her to suffer both physical and psychological harm from which they may never fully recover.

218.    As a legal result of Uber's negligent misrepresentations, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

## COUNT ELEVEN –  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *(All Plaintiffs)*

219.    Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

220.    For several years prior to Uber driver sexually assaulting Plaintiffs, Uber was fully aware that other female passengers had been sexually assaulted and raped by Uber drivers.  Since at least 2014, Uber has received frequent passenger complaints about driver misbehavior, has been notified of police investigations of the criminal conduct of drivers acting within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and sexual assault of Uber's passengers by Uber's drivers.

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

221.   Uber made a conscious decision <u>not</u> to implement procedures that would effectively screen its drivers and monitor its drivers to identify and terminate drivers who were sexual predators.

222.   Safety precautions such as enhanced background checks, biometric fingerprinting, job interviews, electronic monitoring systems, warnings to passengers of the dangers of being attacked by Uber drivers, and cooperation with law enforcement when a driver attacks a passenger would have cost Uber money and reputational damage.  Because of this, Uber decided <u>not</u> to implement such precautions and instead continues to place its passengers at greater risk of sexual assault and rape by Uber's own drivers.

223.   Additional safety precautions that Uber chose not to make include but are not limited to: ongoing monitoring of Uber drivers through available technology including cameras and GPS; a zero tolerance policy for drivers who deviate from expected behavior by leaving the vehicle with passengers, or by deviating substantially from the assigned route; a zero-tolerance program for sexual assault and guidelines mandating immediate termination; creating and instituting a system encouraging customer reporting; and adequate monitoring of customer complaints by well-trained and effective customer service representatives.  Uber chose not to implement such precautions, nor did it warn passengers of the risk of being sexually assaulted in light of the fact that these safety precautions had not been implemented.

224.   In failing to take these and other safety precautions designed to protect passengers from sexual predators driving for Uber, Uber breached its duty of reasonable care, negligently inflicting emotional harm upon each plaintiff, and acted recklessly and in conscious disregard of their safety.

225.   As a direct and legal result of Uber's negligent infliction of emotional distress, Plaintiffs have suffered damages, both economic and general, non-economic damages according to proof.

## <u>COUNT TWELVE – BREACH OF CONTRACT</u>
### *(As to all Plaintiffs, excluding Plaintiff Doe 9 )*

226.   Plaintiffs hereby incorporate by reference the preceding causes of action and

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   factual allegations.

2       227.   Plaintiffs entered into a contract with Uber.  The essence of this commercial

3   transaction was the payment of a fee to Uber in exchange for safe and reasonable transportation to

4   their destination.

5       228.   As a result of the conduct, acts and omissions set forth above, Uber breached its

6   contract with Plaintiffs, including breaching implied covenants which would be inherent in such a

7   contract.

8       229.   As a legal result of Uber's Breach of Contract, Plaintiffs have suffered damages,

9   both economic and general, non-economic damages according to proof.

10  **COUNT THIRTEEN – STRICT PRODUCT LIABILITY BASED ON DESIGN
    DEFECT OF THE UBER APP AND FAILURE OF THE UBER APP TO MEET
11  MINIMUM REASONABLE CONSUMER SAFETY EXPECTATIONS**
    ***(All Plaintiffs)***
12

13      230.   Plaintiffs hereby incorporate by reference the preceding causes of action and

14  factual allegations.

15      231.   Uber manufactured and distributed the Uber App.

16      232.   The Uber App did not perform as an ordinary consumer would have expected it to

17  perform when used or misused in an intended or reasonably foreseeable way, because the Uber

18  App falsely led Plaintiffs to form a reasonable minimum safety expectation that was not met.

19      233.   The Uber App did not include safety features such as a GPS tracking system that

20  would alert Uber, to the early termination of a ride, substantial deviation from the intended route,

21  or a passenger continuing to travel in the Uber vehicle after the driver ended the ride in the app.  It

22  also did not include the automatic activation of the camera in drivers' smart phones when a ride is

23  in progress.

24      234.   The Uber App also failed to communicate with Plaintiffs a true expectation of the

25  lack of safety in use of the Uber.

26      235.   These flaws in the design of the Uber App, were a substantial factor in causing

27  harm to the Plaintiffs, which included being sexually assaulted, sexually battered, kidnapped, and

28  or otherwise attacked by Uber Drivers, which humiliated, degraded, violated, and robbed Plaintiffs

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

40

of their dignity and personal safety.  The depraved attack on Plaintiffs caused Plaintiffs to suffer physical and or psychological harm from which they may never fully recover.

236.    As a legal result of Uber's aforementioned acts and omissions, Plaintiffs have suffered damages, both economic and general, non-economic damages, according to proof.

## COUNT FOURTEEN – STRICT PRODUCT LIABILITY BASED ON FAILURE TO WARN OF THE RISKS POSED BY THE UBER RIDESHARING APP
### *(All Plaintiffs)*

237.    Plaintiffs hereby incorporate by reference the preceding causes of action and factual allegations.

238.    Uber manufactured and distributed the Uber App.

239.    The Uber App presented potential risks of introducing each driver to a passenger who, because of the nature of the ridesharing arrangement created and facilitated by the Uber App, could neither escape from the Uber driver's vehicle nor control the place where the driver would take the passenger, which could result in the sexual assault of that passenger; these are risks that were known or knowable at the time of manufacture and distribution of the Uber App.

240.    The potential risks presented a substantial danger when the Uber App was used or misused in an intended or reasonably foreseeable way.

241.    Ordinary consumers such as Plaintiffs would not have recognized the potential risks.

242.    Defendant Uber failed to adequately warn consumers, including Plaintiffs, of these potential risks.

243.    Uber's failure to provide passengers, including Plaintiffs, with sufficient warnings regarding the risk of harm to which they were being exposed with each Uber ride was a substantial factor in causing the harm suffered by Plaintiffs, including being sexually assaulted, sexually battered, kidnapped and or otherwise attacked, which humiliated, degraded, violated, and robbed Plaintiffs of their dignity and personal safety.  The depraved attack on Plaintiffs caused Plaintiffs to suffer physical and or psychological harm from which they may never fully recover.

244.    As a legal result of Uber's aforementioned acts and omissions, Plaintiffs have

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1  suffered damages, both economic and general, non-economic damages according to proof.

2

3  ## PUNITIVE DAMAGES

4  245.    Plaintiffs hereby incorporate by reference the preceding causes of action and

5  factual allegations.

6  246.    As stated above, Uber knew that it faced an ongoing problem of sexual predators

7  driving for Uber and assaulting its passengers.  As early as 2014 Uber knew that its drivers were

8  sexually assaulting female passengers. Since 2014, Uber has received frequent passenger

9  complaints about driver sexual misconduct, including sexual assault and rape, it has been notified

10 of police investigations of the criminal sexual conduct of drivers acting within their capacity as

11 Uber drivers, and it has been the subject of numerous civil suits alleging the sexual harassment

12 and sexual assault of Uber's passengers by Uber's drivers.

13 247.    Nevertheless, even though Uber was fully aware of its sexual predator problem it

14 failed to take safety precautions to protect its passengers.

15 248.    Even after Uber was aware some Uber drivers were using driving for Uber as an

16 opportunity to get unsuspecting women into their vehicle and to sexually assault them, Uber made

17 the conscious decision not to implement more thoroughly vet its drivers before and after hiring

18 them.

19 249.    The decision not to implement more thorough and persistent background checks

20 was driven by Uber's desire for rapid expansion and increased profits, because the more drivers

21 driving for Uber, the more money there was to be made.

22 250.    Prioritizing profits over safety, Uber also made the conscious decision not to warn

23 its customers/users of the risk of being sexually assaulted even after it was fully aware of this risk.

24 251.    Safety precautions such as enhanced background checks, biometric fingerprinting,

25 job interviews, electronic monitoring systems, ongoing monitoring of Uber drivers and rides

26 through available technology including cameras and GPS; a zero tolerance policy for drivers who

27 deviate from expected behavior by leaving the vehicle with passengers, or by deviating

28 substantially from the assigned route, a warning system for when a driver significantly deviates

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT FOR DAMAGES

from the intended route or prematurely terminates a ride, a system for checking in with and verifying a passenger's safety when a driver prematurely terminates a ride or significantly deviates from the intended route ; a zero-tolerance program for sexual assault and guidelines mandating immediate termination; a zero-tolerance policy for fraternizing with passengers, creating and instituting a system encouraging customer reporting; and adequate monitoring of customer complaints by well-trained and effective customer service representatives, warnings to passengers of the dangers of being attacked by Uber drivers, and cooperation with law enforcement when a driver attacks a passenger would have cost Uber money and reputational damage.  Because of this, Uber decided not to implement such precautions and instead has continued to place its passengers at greater risk of kidnapping, sexual assault, rape, and exploitation by Uber's own drivers.

252.     Prioritizing profits over passenger safety, Uber acted, and continues to act, recklessly and in knowing, conscious disregard of the safety of its passengers, including that of Plaintiffs, and the public.

253.     As a legal result of the aforementioned negligent, reckless and grossly negligent conduct of Uber, Plaintiffs were sexually assaulted, sexually battered, kidnapped and or otherwise attacked by their respective Uber drivers, which humiliated, degraded, violated, and robbed them of their dignity and personal safety.

254.     The depraved attack on Plaintiffs caused Plaintiffs to suffer serious emotional distress as well as physical and or psychological harm from which they may never fully recover.

255.     As a result of Uber's misconduct as stated above, Plaintiffs pray for exemplary damages to punish Uber for its misconduct and to deter future misconduct.

## **PRAYER FOR RELIEF**

256.     For these reasons, Plaintiffs pray for judgment against Defendants Uber Technologies, Inc., Raiser, LLC, and Does 1-50 inclusive.  They ask that this judgment be inclusive of all Defendants, and that they be held jointly and severally liable, as follows:

      a.  For special damages, according to proof;

      b.  For past and future general damages, including physical pain, mental anguish, disfigurement and physical impairment, according to proof;

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

1   c.   For past and future lost earnings and/or earning capacity, according to proof;

2   d.   For medical expenses, past and future, according to proof;

3   e.   For punitive and exemplary damages, according to proof;

4   f.   For prejudgment interest from the date of each Plaintiff's respective incident  to the

5       date of judgment, as provided by law, according to proof at the time of trial;

6   g.   For costs of litigation incurred herein;

7   h.   For attorney's fees;

8   i.   For such other and further relief as this court may deem just and proper.

9

10  DATED:  June 1, 2021              LEVIN SIMES ABRAMS LLP

11

12                                  By: _____

13                                      Laurel L. Simes

LEVIN SIMES ABRAMS LLP
1700 Montgomery Street, Suite 250
San Francisco, California 94111
415.426.3000 phone • 415.426.3001 fax

COMPLAINT FOR DAMAGES

# PROOF OF SERVICE

*Jane Doe LSA 3 v. Uber*
*(USDC CASE)*

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Irvine, State of California, and not a party of the above-entitled cause. On **June 2, 2021**, I served the foregoing document described as:

**DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332, 1441, AND 1446 (DIVERSITY JURISDICTION)**

on all other parties and/or their attorney(s) of record to this action by ☐ faxing and/or ☒ placing a true copy thereof in a sealed envelope as follows:

| | |
|---|---|
| Laurel L. Simes, Esq.<br>Rachel Abrams, Esq.<br>Meghan E. McCormic, Esq.<br>LEVIN SIMES ABRAMS LLP<br>1700 Montgomery Street, #250<br>San Francisco, CA 94111 | *Attorney for Plaintiff:*<br><br>Tel: 415-426-3000<br>Fax: 415-426-3001<br><br>Email: llsimes@levinsimes.com<br>rabrams@levinsimes.com<br>mmccormick@levinsimes.com |

☒      **BY MAIL**   I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. The address(es) shown above is(are) the same as shown on the envelope.  The envelope was placed for deposit in the United States Postal Service at Buchalter in Irvine, California on **June 2, 2021**.  The envelope was sealed and placed for collection and mailing with first-class prepaid postage on this date following ordinary business practices.

☒      **BY OVERNIGHT DELIVERY**   On **June 2, 2021**, I placed the FedEx/GSO package for overnight delivery in a box or location regularly maintained by FederalEx/Overnite Express at my office, or I delivered the package to an authorized courier or driver authorized by FedEx/GSO to receive documents.  The package was placed in a sealed envelope or package designated by FedEx/GSO with delivery fees paid or provided for, addressed to the person(s) on whom it is to be served at the address(es) shown above, as last given by that person on any document filed in the cause; otherwise at that party's place of residence.

☑      **BY EMAIL**  On **June 2, 2021,** I caused the above-referenced document(s) to be sent in electronic PDF format as an attachment to an email addressed to the person(s) on whom such document(s) is/are to be served at the email address(es) shown above, as last given by that person(s) or as obtained from an internet website(s) relating to such person(s), and I did not receive an email response upon sending such email indicating that such email was not delivered.

☑      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 2, 2021, at Irvine, California

_____
Lina Velasquez

_____
(Signature)